Thank you. I'm Kathy Wisniewski for FCA U.S. LLC, formerly known as Chrysler Group. I'd like to reserve two minutes for rebuttal. May it please the Court. In August of 2009, the plaintiff in this case walked into a FCA U.S. dealership and asked the dealership if he could get his broken window fixed. The dealership said yes, they could fix it for $100. The plaintiff agreed to pay the $100. The dealership fixed the window. The window is now seven years later since being fixed, and it still works today. He's never had a problem with it. He has no injury. He has no damages. This was a bargain for a fix. This was the value of the fix is its utility. It continues to be utilized today. His damages have varied throughout the course of the case. At one point it was, at the time that we were in the district court, the vehicle was somehow, the value of the vehicle was somehow diminished. He's now abandoned that as his type of damages. He says right in his brief on page 55 that he is not seeking diminished vehicle value damages. He, as I understand it, he's now arguing that he paid more than he would have if he had realized the risk of failure of this window replacement. And it seems that there's expert testimony that these window replacements have a risk of failure. So why is he not injured for having paid, maybe it's $100 instead of, if he'd known it had a risk of failure, $75 or whatever it would have been worth to have a possibly faulty window replacement? Well, Your Honor, that's a good question. I think the answer to that question is more in logic than anything. Every product that is on the market has a risk of failure, every single product. But some have a higher risk of failure than others, and I think his allegation is that this has a high risk of failure, and the company didn't disclose that. If they had, the value of the replacement would have been lower than it was when people didn't know the risk of failure. That's at least his theory, and I think California courts have recognized that theory. So it seems like a plausible injury. Now, you may be able to win at trial with the idea that it isn't really faulty or the experts saying it has a high risk of error is wrong. But as a theory for standing, I'm not sure how you get around this. As an initial matter, I'm not so sure this court has ever recognized that as a theory of damages in the context of going in and buying a service, basically. Well, he bought a product. He didn't buy a service. He bought a service. He went in to get his window fixed. But he ended up with a new window, right, or a new window mechanism. He had to buy a new window mechanism as part. He bargained, though, to have his window fixed. Well, so you may have an individual argument that he got a good deal, but as a theory, which he's trying to press on behalf of a class, and you may have other arguments about why the class isn't valid, but as a theory that someone paid too much for a product, I mean, you're now calling it a service, but he got a replacement mechanism, didn't he? I'm not sure how you're saying that the service makes a difference. It makes a difference because it's about what he bargained for. He went in. It's about the value of his bargain. At its core, it's about the value of his bargain. His bargain was, I need my window fixed. How much will you charge me to get my window fixed? And he says, if I had been told that day that it might fail at whatever percentage rate these windows are failing, that he would have bargained differently. So why isn't that an injury? The rate, by the way, Your Honor, for these windows is less than 1% failure rate for these windows. It's about a 0.8% failure rate. But the issue is, you know, what is the value of the bargain that he made? The value of the bargain is what was his motivation for making that bargain? His motivation was to get my window fixed. He got his window fixed. This is not like buying a car where, you know, courts have now, within the Ninth Circuit, regularly recognized a difference in value in the purchase price. This is not like a car. You buy a car, you think the car itself has value. And it has value on the day you buy it. It has value when you go to trade it in or resell it. And that value of that product may be affected, may be affected by the existence of a defect, whether it ever is manifested or not. The problem with the theory here is, he bargained for a fix, and he got the fix. And tomorrow he could sell his car. And when he goes to resell his car. Maybe it will fail between now and tomorrow because it has these failure rates, and he didn't know that. So that maybe means that he would have bargained differently, and thus he's injured by the failure to disclose the failure rate. Perhaps it will not fail either, Your Honor, and that's the point. Giving him money today on the basis that there's some speculative failure in the future is going to amount to a double recovery in the end. His class includes people who went to a dealership, bargained for to have their window fixed and nothing more, got their window fixed, have since traded in their vehicle and got more for their vehicle because that window worked than if it had been broken. When you go in to trade your car and you sell your vehicle, what's wrong with it? The window's broke. Well, that's a $100 induction. Those people, though, have the same argument, don't they, that they paid $100 or $200 or whatever they paid for the replacement product. And if they had known the failure rate, maybe they would have paid less. It seems like they still have this paying too much injury, which you might be able to succeed in showing isn't based in fact because maybe this failure rate is the same as any product or you could win some other way. But the notion of that type of injury, I'm not sure why under law that shouldn't be an injury. Well, Judge, I guess maybe it's more of a policy argument to answer your question. I mean, where does it end? You know, I buy a product, I bargain for a product, or I buy a service, I bargain for a service. Years later I decide, hey, it's working perfectly, but maybe, you know, I heard through the grapevine that this might fail. One of your defenses, as I understand it, though, is that the company actually offered, I mean, sent out letters offering to replace these. I don't think that's something that happens very often unless there's an actual problem. Here is another problem I wanted to address today, Your Honor. The fact that that's not a correct fact. Mr. Doyle owned a 05 Jeep Liberty. It had a pin-on-glass window regulator in it, okay? In 06 and 07, the company wanted to try a new product for its window regulators. It tried a snap-in, okay? The snap-in design, as they've well admitted on the record and everywhere else, proved to be a disaster, okay? It failed at enormous rates. So they did offer to replace all of those for free and to reimburse people who had already paid. Mr. Doyle never had one of those bad regulators. The people who had his regulators were never offered any type of relief. That's part of the problem with this record, is the plaintiffs moved for a class that included all these different regulators. And the district court here seems to have thought that all the different regulators were similar enough that they had the same defect. And that seems to be a fact-finding that we would have to review for clear error. Is that right? No, Your Honor, that's not correct. Why not? When all the regulators were going to be in the class, the court issued its tentative order, which he mentions in his final order, saying when I initially entered my tentative order, I thought these product differences were going to matter. But now that the plaintiffs have narrowed the class, have identified certain part numbers, I've decided they don't matter at all. So because he thinks they all have, for relevant purposes, the same defect. And I think that's a finding of fact. Your Honor, you also are mixing the apples with the oranges here. The district court, when it was looking at more than the different types of regulators, I thought your question was, well, the district court found that all these regulators, the snap-in, the pin-on glass, and the service kits were similar enough to move forward. I think that's what he found. That is not what he found, because the plaintiffs dropped the service kit. Okay, well, so whatever's left, whatever they haven't dropped, he found they were relevantly the same, right? He found that the pin-on, he said they had differences. He said they had minor differences. But differences that he thought didn't matter, and that seems like a fact. He's saying the mechanics of these things are relevantly the same. There is no evidence in the record whatsoever to support the judge's finding. So now you're arguing it's a clear error. I'm arguing class certification was a clear error. If we want to move on to class cert, I was arguing standing. But if we want to move on to class cert, yes, it was a manifestly erroneous for the court to, in a one-sentence sweep, decide that the plaintiff could represent people who bought products that were different than him. And, you know, perhaps the court did. No, no, no, but now you're jumping. So I'm just trying to establish whether the district court made a fact finding that the products that are still within the class definition are relevantly the same. Is that a fact finding to which we owe clear error review, or is there something else going on that I'm not understanding? I disagree that he made that finding, Your Honor. There's no finding. There is a passing reference that says these minor differences. There's no evaluation. There's no rigorous analysis as it was required for this finding, for this proceeding. There's nothing in the court's order that's indicative that the rigorous analysis that this circuit has repeatedly indicated has to be applied in deciding class certification. And even putting that aside, I mean, he was going down a new path that this court hasn't spoken on at all yet about whether somebody who buys a product, one product, can represent people who bought another product. Okay, the court was considering that issue, which this circuit has never commented on or established criteria for. And perhaps that's why he didn't sit down and apply some set criteria for what do I have to go through to decide whether this person who bought this product can represent people who brought a product that's different than that. I think it's because he thought that, relevantly, the products were the same. So maybe you have two phones that have the same speaker, and the speaker is the defect. Whichever phone you have, as long as it has that same speaker, then you have the same injury. I think that's how he was treating these window regulators. Your Honor, that's part of the problem. You think, but we don't know, because there's nothing indicative in the order of how he came to any such conclusion that the differences that he acknowledged did exist were not significant enough to preclude the plaintiff from representing. And it's directly, it's manifestly erroneous and directly contrary to the record, because plaintiff's own experts said, look, you know, I can take these two different parts, talking about the front regulators and the back regulators. I can take these two different parts. I can subject them to the same failure mode analysis, which is a test to determine at what point a product will fail. Applied to every product in the world. He applied a heat creep test, because these were made of product, which is a universally recognized test for testing the failure point of a product made of plastic. I can apply that test to both of these products. It would be the same analytical process. But he unequivocally said the answers would be different for each of them as to what the failure point was for each of them. Which is also reflected just abundantly in the records if you were to separate out the products that the plaintiffs ultimately decided at the hearing, which Pricer was not allowed an opportunity to submit evidence after they narrowed the class even more. If you were to take from the evidence just the failure rates that applied to the pin-on-glass front regulators and compare them to anything else, you would find that they were minuscule. And the backs were a little more substantial, still less than 1%. But there was nothing like that was done. The court made its decision based on a composite regulator that was not at issue. It never considered the plaintiff changes his class definition. As I'm standing here trying to argue you shouldn't certify a class based on what I thought the class was going to be. Did you object at that point and say we need a chance to respond? Yes. I was denied. We're running out of time, but you mentioned class certification. What tantalizes me, and I'll tell you what it is, is Rule 23B3's requirement of superiority. What is the program that Chrysler put in place to make whole or whatever it was all of these problems that we're talking about? Well, Judge, again, I want to be honest and clear. I hope you always are without having to say that. Whenever anybody says to be honest, I'm worried about everything they said before wasn't. But, okay, go ahead. I mean, what you said would probably help me, so I guess I started with that qualifying. But this is one of the reasons the class we believe was improperly certified, too. There's two distinct groups of people here. There is Mr. Doyle and his group of 02-05 vehicle owners who were not part of that program. They had the pin-on-glass regulators from the beginning, which Chrysler never saw as a problem, ever. Then there's the 06-07 owners, which the court swept into the class based upon Mr. Doyle's request, who had bad regulators. They were the snap-in regulators. Chrysler's program was only for those people. 06-07. Right. Correct. And the program was we're going to give you seven years of coverage for your window regulators. If they break, we're going to repair them for free. Was it only for original owners? No. The warranty fouls the vehicle. But it was only for owners? Did it apply for people who were leasing? No, it was leasing. I'm sorry. Yes, lessees, too. Lessees are treated as owners. How about for replacement windows, or was it only for original equipment? It was for the window regulators in those cars, the original equipment. No, it was for window regulators in the vehicles. Where in the record can I read what you're talking about? Chrysler promises to do X. Where is that in the record? The letter that was sent to owners is in there. The dealer announced that. Where, where, where, where? Judge, I'd have to look at my brief. Okay, I'll find it. I will tell you. I mean, I think it's at 133 and 136 of the ER, but I don't think it's so clear that it matches what you just said. It sounds from the letter like it's original owners. It doesn't talk about leases, and it doesn't seem to talk about replacements. That letter went to owners who could be identified. I believe there's a declaration also in the record that talks about this. It went to owners who could be identified at the time the letter was sent. So, counsel, perhaps in rebuttal, we'll give you one minute for rebuttal. In rebuttal, you can look in your materials and answer Judge Friedland and Judge Trott's question. Thank you. Good morning, Your Honors. May it please the Court. I'm Justin Karzag. I'm counsel for the appellee. And because I didn't get a chance to get into this with the other side, I'm going to get right into it with you. The 0607, it seems there's some kind of a program to make everybody whole. Why is class action superior? I'm talking about, you know, the Carter's web case that says pretty much because Carter's is already offering the very relief the plaintiff seeks, it allows customers to obtain refunds for the garments. It's not a superior way of doing anything. Hamlin requires us to look at everything under the sun. And why isn't this a case that fails that test? This is not the superior way to resolve all this. Perhaps the best way is to have Chrysler make everybody whole in the 0607 group. I appreciate the question. I think it's a very good question. Thank you. First one today. Go ahead. The issue, Your Honor, is the program. If you take a look on the record at the excerpts of Record 136, that's the letter that they say evidences the program. Right. The letter is directed to the evidence only shows a certain subset of owners, right, not everyone that would be in the class. And it says, and I'll bold underline in the second paragraph, it says, if your vehicle is operating properly, there is nothing you need to do. So it doesn't tell everyone, hey, come in and get your window regulator replaced. It's defective. Instead, it says if it's already broken, then come and fix it. If not, you don't do anything. But then if it breaks, can't you take it in? There's no evidence of how long this program is going to go. Moreover, there's a big problem. I thought you said seven years. That's why I was like, where did I find that? It says seven years in the letter. Yeah. Okay. So the letter says seven years. There's no evidence the program will go that far. That's speculative. That's not speculative. They said it. I mean, if I'm sitting in a district court and somebody comes in with this letter that says seven years, I'm fine in seven years, over and out. Correct, Your Honor. The issue, though, is that waiting for people to have their windows regulators break, we're going to have thousands of cars, owners driving around out there, waiting for the window regulator to create the defect. When the defect occurs, the testimony, both lay and expert, has been that the window crashes down with a loud noise. Glass comes shattering. They didn't say don't bring it in. They said you need to do nothing. They didn't say don't. You could. I mean, if I saw that letter and I had that window, I'd drive in there tomorrow and say fix the damn thing. They didn't say you can't or you shouldn't or don't need to. Assuming your car was running, if it was a Jeep Liberty back then. Yeah. Correct, Your Honor. They do not instruct people not to bring in their cars. But there's no evidence that this letter went out to everyone that would be in the class. The letter also gives them positive misinformation. That is, if there's no break, you don't need to do anything. But what if I never got the letter and I'm driving around and the thing breaks and I drive into Chrysler and say what the hell are you people going to do? Wouldn't they necessarily say we're going to fix it for free? I don't know what they would say at that point. I know that various class members have had to. Doesn't that letter pretty much say that? The letter that's addressed to certain owners, I don't know what Chrysler's database is like. I don't know how they track these things. This only went to a certain subset of class members. But if anybody with an 0607, the way I read that letter, anybody with an 0607 problem drives in and says, look, the thing broke. They're going to fix it free. It still doesn't cover those that had to pay for a repair or those who had to pay already for a defective replacement regulator. Those people are not covered. They're not covered. So before the letter went out? No, even after the letter. All the letter says is the letter says that Chrysler will repair the window. It doesn't say if you've already paid for a window repair, you can come in and we'll reimburse you. It doesn't say that. It's not true. It says if you've already experienced this window regulator concern and have paid to have it repaired, you may be eligible to receive a reimbursement. It says you may be eligible to receive a reimbursement. There's no indication for what the criteria is, how much Chrysler would consider to be a reasonable reimbursement. Well, they have a form for sending your receipt. I mean, it comes with the letter. There's no evidence in the record of how this program actually works. There's no evidence that it is working. There's no evidence that it went to all class members. If it works, it's a far superior way to resolve this controversy as far as I can tell. I disagree for one key point. This is a safety issue. The expert testified five safety issues. So you're shifting, I think, from what your theory is at this point, as I understood it, because saying that this is a safety issue makes it sound like what you're requesting as relief in this case is some kind of replacement. But as I understand it, your damages request at this point is some kind of reimbursement, some percentage of reimbursement of an amount that was already paid. Am I wrong about that? Correct. There are two forms of damages that we are seeking. We are seeking for those who paid for a defective replacement window regulator, reimbursement of that. And we are seeking for those who had to pay to repair the window when it was broken with whatever part that, if they qualify for having a replacement regulator in there in the first place, for recovery of those damages. So both of those sound like reimbursement types of damages, reimbursements for amounts that were paid. Am I right? Correct. Okay. So doesn't the class definition include people who didn't pay? Well, the class definition does under the UCL. And under the UCL, once the class is certified, the court can order injunctive relief and can order Chrysler to ensure that, to give complete relief, which is. But now you're just shifting your theory of relief. I asked you what are you seeking, and you said reimbursement damages. That is one component of damages, but we're also seeking equitable relief. And what is the form of equitable relief that you're seeking? And where is that made clear? I would have to go back to the front of the passage of the complaint. I'm happy to do that. Did you press in the district court a theory of equitable relief that you were seeking on behalf of this class? No, it was not pressed. Okay. So it doesn't seem like you are seeking that anymore. I mean, in your class certification motion, you have to say what you're seeking. And as I understood it, at this point, the only thing you were seeking was reimbursement damages. When it comes to damages, yes. Okay. So if you're seeking on behalf of this class reimbursement damages, then how do you satisfy Comcast when your class includes people who didn't pay anything so couldn't be reimbursed? I think that the ample case law that we have cited says that the class often includes members that don't have damages. Otherwise, the class definition would be an impermissible fail-safe class. That's not the issue. That comes to a damages point, which comes after certification. Okay. How is your client typical of a class when he had expenses that he's seeking reimbursement for, and the class definition includes people who didn't have expenses? How can he be typical of people who don't have the same experience? Okay. That's also a good question. So in the case law that we cited, both Wollen and Hanlon v. Chrysler, the only question is whether or not the representative claims are typical or if they're reasonably coextensive with those of absent cluster. Right. And his are not, are they, if they are people who didn't have any expenses? The damage side is different from the claims. The predominant issue in this case that the court found was that there was a defective, was that plaintiff's theory was, was that there was a defective plastic part used in the window regulator that was subject to heat creep. Okay, great. So there is a, I think that's a common issue, whether that's true or not. But his claim, I think at this point, is a request, is a damages claim for reimbursement. And that's not something that everyone in this class has, I don't think. Well, to the extent, to the extent that there's a damages claim after, there's no case law that says that the named plaintiff has to suffer the most, the maximum possible damages of every class member. It doesn't say that. He was harmed when a replacement regulator was put into his car by Chrysler. The damage that he suffered that flowed from that was one of two things. Either A, he then bought another defective replacement regulator, or B, he paid for a fix.  He's claimed that he's harmed. And some people in this class did neither of those two things, correct? Correct. So how are they, how is he typical of them? How can he even represent them? The kinds of relief that he would seek to help him are not the same kinds of relief that would help these people who didn't pay. Well, the kinds of relief that he would seek is he would submit his repair bills. Right. And how does that help the people? The people who are in the class, as you've defined it, include people who the relief for them that would help them would be to ask for a replacement. The kind of injunctive relief that I think you've dropped along the way. So how does that not show us that he's not an adequate representative of everyone in the class as you've defined it? So when it comes to the kind of, the manner in which he would submit his damages claim, it would be the receipts for what he did, the evidence of his damages, right? The documentary receipts. Class members would submit their own. Those receipts could come in the form of repair receipts, or they could come in the form of the purchase for a defective replacement regulator. And what are the people going to do who didn't have receipts because they didn't pay for this? Those people would not have damages. And so they would have no relief, but you've put them in this class where they're going to be bound by the result of this case. To the extent they're going to be bound by the result of this case, but if they have no damages, what's the harm? Well, maybe they would prefer to be in a class that was seeking injunctive relief to get repairs. They're not going to, well, okay. So if injunctive relief is not going to be allowed in this case, then they wouldn't be bound by any kind of finding that doesn't include, yes, injunctive relief or no injunctive relief. I don't think that's true. I mean, if they're in this class and there's a finding here, ultimately a trial that these windows are not defective, those people are going to be bound by that, and they're not going to have another case where they can get repairs. Right, but to the extent that Doyle has evidence and put on evidence that there was a defect, that evidence is the same regardless of what the ultimate damages are. But they might not want Doyle representing them because he's not the same as them or similarly positioned to them, right? It seems to me, listening to the colloquy here, that you're saying that there are some members of the class who have a different interest than Mr. Doyle. No. Because you're saying they're not seeking damages. Correct? No, that's not what I'm saying. Well, didn't you just say they wouldn't be seeking damages? Every member of the class has an interest in proving the defect, in proving that the defective plastic polymer resulted in heat creep, which can cause window regulator failure and cause the windows to come crashing down. In Comcast, they talk about modeling for damages. Right, and in Comcast, the nature of Comcast was it had to do with clustering of cable or satellite television providers in certain areas, swapping one service provider for another to create these clusters that overall affected the pricing in the area. The only way that they could prove damages there was by a regression model. There was originally four classes. There was one regression model submitted with the four classes. I don't think we need to go through all the facts of Comcast, but isn't the point of Comcast that you have to have a damages model that applies to the whole class? Absolutely not. Okay, why not? Absolutely not. Case after case after case in the Ninth Circuit has confirmed that that's not what Comcast stands for. And we have it in our brief, but additionally, there are the following cases. It doesn't mean everyone has the same damages, but don't you need a methodology, some kind of model that applies to everyone, even if individual calculations need to be done under that model? That's a good question. The question is, doesn't Comcast require you to have an approach to calculating damages that would apply to everyone in the class? That doesn't mean everyone's damages would be the same, because maybe the approach is you get a 20 percent reimbursement from what you paid, and so everyone would go through an individual calculation of what was 20 percent of the amount that they particularly paid. But you need a universal approach for the whole class. What will the approach be? Is it 20 percent reimbursement? Is it 40 percent reimbursement? Is it full reimbursement? You need a model, some kind of theory of damages, I think, that applies to the whole class. Well, I don't think so. I mean, it depends upon the kind of damage that you're presenting to the class. If you have to have a model that applies to the whole class uniformly, that almost destroys consumer class actions. No, you could have a class here of people who paid for window regulators, and you could have a theory that they deserve 25 percent back. It needs to be a smaller class than the one that's being proposed. That's why I was getting back to my question. When you said there are people who haven't had repairs done, they're seeking injunctive relief. People who have had repairs done, they're seeking money. I mean, right there, wouldn't it make sense just to have a smaller class and have a class about the people seeking the money, and then if people really want to be part of this injunctive equitable class, they could do that, just have two different cases as opposed to lumping them all in the same one. Perhaps I misspoke to the extent that when I was talking about the injunctive relief, I was talking about it in comparison to Chrysler's letter that purports to describe a voluntary program that was sent to a certain subset of people containing just certain model years that is, I believe, misleading and incomplete in its form. If we proceed on a class, the kind of relief that is possible is an order from the court that would ensure that that happens. Here, the letter— So we're back to that question then. Yeah. Where in your class certification motion, in the arguments about it, did you say that you're seeking injunctive relief on behalf of this class? This is only in response to the question as to whether or not the letter solves the issue. No. We're asking about whether this class was properly certified based on the relief you're seeking for this class. It seems like you have a mismatch between your definition and the relief you're seeking. The relief that we're seeking, the relief that we are seeking, putting the letter aside, the relief that we are seeking is for damages for purchasing a defective window regulator or damages for a proper repair of the window, as evidenced by the receipts. To the extent that there are some class members that may not have done that, they are still damaged by the fact— But they get no help from this case, right? Because they have no receipts. Another good question. Let me think about that. Well, you're about out of time. I would add that it looks like paragraph 121.0 of the complaint says one of the common questions is whether plaintiffs and class members are entitled to equitable relief. But that's the only time I see the word equity, equitable, anything. I thought it was waved or dropped along the way. It's not in the class certification papers as far as I could tell. If you give me a minute, I can find it. Well, I think we actually probably do need to wrap up. If you want to submit a 28-J after argument, certainly you can do so. I appreciate that. Thank you. All right. You guys have had a lot of questions, but I said one minute, so we're going to give you your one. But there was a question from the panel, and you were going to look it up. I believe the question was where in the record you could find information about the extended warranty program, and Justice Friedland was correct. It was 133, 134, but also 221 and 222 we would ask you to look at. Very quickly, I think the argument made here displays a very serious problem with the class. He kept referring to the 0607 owners as a subclass. Subclasses need representatives. Mr. Doyle is not a representative of that subclass. Did you make the argument in the district court that we've just been discussing for quite a while here with your opposing counsel about whether the class We argued that the class included people who did not have standing in their own right. In that context, yes, we argued that there were people who had not paid, people who had been reimbursed, and that those people would have no damages. So in that context. Did you focus on the definition? I mean, as a matter of whether he's typical or whether he's an adequate class representative, did you ever say there's a problem with this class definition and those requirements for class certification? Where in the record did you do that? That's in the class certification briefing. We challenged the adequacy. On the basis of this issue that people were not, some people didn't pay? We argued that, yes, I believe, yes. We argued that several times in the briefing. And again, I would just go back to, because as the damage theory here today, again, seems to be changing, this is what happened. It was like a target that kept moving. Every time we would argue against what they were proposing, he would change the class or he would change the makeup of the class. We started off having to address extremely broad issues because there was so much stuff in the class. Then they tried to narrow it. We were offered an opportunity when he first tried to narrow it to submit additional evidence, which is the 221-222 that I raised. So there was some additional briefing there and some additional evidence. Then it was narrowed even more, and we were not given an opportunity. But we did raise every issue at some point, although it may not have been precisely to the class that was ultimately certified, only because we were not given an opportunity to ever address that precise class that was ultimately certified. Is Chrysler offering everything that people in the 0607 group want and are asking for? Anybody who paid, yes, because anybody who paid for a regulator would have been totally reimbursed upon sending in their receipts. It doesn't even have to be an original receipt. I mean, we accept many forms of verification. But, yes, that's why we argued at length about not including those people. We said they didn't have standing. We referred to Martin saying a class shouldn't include people who don't have standing. I understand the circuit has backed off of it slightly in Torres. But Torres still says today, just issued a couple months ago, Torres still says today that the class should not be defined to include a large number of members who for some reason could not have been harmed, which is exactly the case with the 0607 owners. Did you say 221 to 222 were the additional pages you wanted us to look at? Yes. Okay. I don't think they say anything about the warranty program, but we can look at that later. If you want to correct that, counsel, after our argument by 28-J, you may do so. Okay. Thank you. All right. Thank you very much, counsel. This matter is submitted.
judges: Trott, Owens, Friedland